IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MALCOLM GILL, Personal Representative of the Estate of ALFORD RAY BRADLEY, JR., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-23-00332-PRW |
| THE GEO GROUP, INC. *et al.*, | ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court are two partial motions to dismiss, one from Defendant The GEO Group, Inc. ("GEO") (Dkt. 16), and one from Defendant Michael Boger (Dkt. 19). Plaintiff Malcolm Gill responded to both motions (Dkts. 20, 25), and Defendants replied (Dkts. 21, 26). For the reasons given below, the Court **GRANTS** Defendants' Partial Motions to Dismiss (Dkts. 16, 19).

### *Background*[1]

This case arises out of injuries related to an umbilical hernia Alford Ray Bradley, Jr. developed while incarcerated at Lawton Correctional and Rehabilitation Facility ("LCRF"), a private prison operated by Defendant GEO. Mr. Bradley developed an umbilical hernia as early as March of 2019. On November 22, 2021, Mr. Bradley informed

---

[1] At this stage, the Court accepts the plaintiff's well-pleaded allegations as true. Therefore, the account presented in this factual background reflects the plaintiff's account.

LCRF staff that the hernia was growing and causing him pain, and he requested medical attention. On December 15, 2021, LCRF physician Defendant Dr. Boger saw Mr. Bradley. In his record of the visit, Dr. Boger wrote that the hernia was the size of a baseball and that it made it difficult for Mr. Bradley to pass stool. Dr. Boger did not refer Mr. Bradley for surgery to have the hernia repaired, and instead told Mr. Bradley to let LCRF staff know if the hernia became a surgical issue.

Mr. Bradley's brother, Plaintiff Malcolm Gill, visited Mr. Bradley over the July 4th holiday weekend in 2022. During his visit, Mr. Gill informed an LCRF guard that Mr. Bradley was not well, that he could not eat or walk normally, and that Mr. Bradley needed immediate treatment for his hernia. The guard responded that care could not be provided because of a lack of staffing over the holiday weekend. A few days later, Mr. Bradley told Mr. Gill during a phone call that he had been requesting medical care for his hernia, that LCRF was doing nothing to treat him, and that he was worried he might die because of LCRF's failure to provide him medical care.

Mr. Bradley was transported to Comanche County Memorial Hospital on July 24, 2022, and hospitalized in the emergency department. After his hospitalization, an LCRF employee informed Mr. Gill that Mr. Bradley's requests for medical care in the days leading up to July 23, 2022, had been denied, and that Mr. Bradley had instead been restrained for being belligerent. Mr. Bradley's treating physician in the Comanche County Memorial Hospital emergency department first attempted to reduce the hernia—a non-surgical course of treatment—but was unsuccessful. Mr. Bradley was then sent to the

operating room where he received surgery to repair the hernia. He remained in the hospital until his death on August 13, 2022, due to post-surgical complications.

Mr. Gill, as personal representative of the estate of Mr. Bradley, sued Defendants GEO and Dr. Boger, among other defendants, in state court for damages arising from Mr. Bradley's injuries and death. Defendant GEO removed the action to this Court on April 19, 2023, and Mr. Gill later filed an Amended Complaint.

The Amended Complaint (Dkt. 12) asserts four causes of action against Defendant GEO. The first is a 42 U.S.C. § 1983 claim for violations of Mr. Bradley's rights under the Eighth and Fourteenth Amendments to the United States Constitution, the second is a claim for violations of Mr. Bradley's rights under the Oklahoma State Constitution, the third is a state-law negligence claim, and the fourth is a state-law claim for intentional infliction of emotional distress ("IIED"). Defendant GEO has moved to dismiss all these claims except for the state-law negligence claim. The Amended Complaint also asserts two causes of action against Defendant Dr. Boger: a § 1983 claim for alleged violations of Mr. Bradley's Eighth and Fourteenth Amendment rights, and a state-law negligence claim. Defendant Dr. Boger has moved to dismiss only the § 1983 claim.

## *Legal Standard*

When reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll well-pleaded facts, as distinguished from conclusory allegations,"[2] must be accepted as true and viewed "in the

---

[2] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

light most favorable to the plaintiff."[3] Parties bear the "obligation to provide the grounds of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[4] The pleaded facts must be sufficient to establish that the claim is plausible.[5] In considering whether a claim is plausible, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving party."[6] Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it "state[s] a claim to relief that is plausible on its face," meaning that it pleads sufficient facts to support a "reasonable inference that the defendant is liable for the misconduct alleged."[7]

## *Discussion*

### I.   *Section 1983*

To assert a claim under § 1983, a plaintiff must show (1) that a right secured by the Constitution and laws of the United States was violated and (2) that a person acting under color of state law deprived the plaintiff of the right.[8] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power

---

[3] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[5] *See id.*

[6] *Brokers' Choice of Am., Inc.*, 861 F.3d at 1105.

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[8] *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).

'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[9]  This authority may be either "actual or apparent,"[10] and "[w]hether a defendant acted under color of state law is a mixed question of fact and law."[11]

While Mr. Gill brings § 1983 claims for deliberate indifference to Mr. Bradley's serious medical needs under both the Eighth and Fourteenth Amendments, the Court applies "the same deliberate indifference standard no matter which amendment provides the constitutional basis for the claim."[12] To state such a claim, Mr. Gill "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[13] First, the standard contains an objective component that requires a "sufficiently serious" alleged deprivation.[14] A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[15]  Second, the standard contains a subjective component, which requires the plaintiff to show "that a medical 'official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

---

[9] *Jojola v. Chavez*, 55 F.3d 488, 492–93 (10th Cir. 1995) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1941)).

[10] *Id.* at 493.

[11] *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

[12] *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (citing *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)).

[13] *Id.* (quoting *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001)).

[14] *Id.* (quoting *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)).

[15] *Id.* at 990 (quoting *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018)).

substantial risk of serious harm exists, and [s]he must also draw the inference.'"[16] Moreover, "a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient . . . to satisfy the subjective component of a deliberate indifference claim."[17]

Defendants argue that the Amended Complaint lacks allegations establishing that any LCRF medical official delayed Mr. Bradley's medical care with the knowledge that doing so posed an excessive risk to his health. First, Defendant Dr. Boger's only interaction with Mr. Bradley was on December 15, 2021, when Dr. Boger examined Mr. Bradley and decided to monitor the hernia rather than recommend surgery. Although Mr. Gill disagrees with Dr. Boger's choice of treatment, there is no indication Dr. Boger knew his decision created an excessive risk to Mr. Bradley's health.

Regarding Defendant GEO, the Amended Complaint does not identify any prison official who allegedly denied Mr. Bradley access to medical care. The Amended Complaint merely alleges that some unnamed prison officials denied Mr. Bradley's requests for medical care for his hernia in the days leading up to July 23, 2022.  Of course, since Mr. Bradley is deceased, it is not surprising that his estate does not yet know the identities of these unnamed employees.

But even once the identities of those employees is known, a private entity acting under color of state law—like Defendant GEO here—is  subject to the same § 1983 liability

---

[16] *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)) (alteration in original).

[17] *Id.* at 996 (quoting *Self*, 439 F.3d at 1234).

standard that applies to municipal governments.[18] Under this standard, known as *Monell* liability, a plaintiff must show (1) that a private entity acting under color of state law enacted or maintained a policy or custom, (2) that the policy or custom was the moving force behind the alleged violation, and (3) that the private entity was deliberately indifferent to the resulting constitutional violation.[19] Furthermore, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."[20] When evaluating such a claim, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[21]

First, the Amended Complaint alleges that Defendant GEO did not properly train or supervise prison staff. But without more, this entirely conclusory allegation isn't enough to state a plausible claim.[22] And while the Amended Complaint alleges that Defendant

---

[18] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying municipal liability standard in § 1983 suit against private entity acting under color of state law); *Alamiin v. Beasley*, 2011 U.S. Dist. LEXIS 72738, 2011 WL 2636538, at *11 (W.D. Okla. June 13, 2011) ("The Tenth Circuit applies the same test applicable to municipalities when determining whether a private prison corporate actor has personally participated in the violation of a prisoner's constitutional rights[.]").

[19] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013).

[20] *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985).

[21] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1288 (10th Cir. 2019) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410–12 (1997)).

[22] *See Tarrant v. Perry*, 2022 U.S. Dist. LEXIS 59758, at *9 (W.D. Okla. Mar. 31, 2022) ("[A] plaintiff must do more than offer a conclusory statement of 'failure to train and to supervise[.]'").

GEO violated Mr. Gill's constitutional rights with its application of Oklahoma Department of Corrections Policy OP-140121 regarding outside providers for health care management, Mr. Gill has not alleged that this policy is facially unconstitutional, so he must do more than merely point to this single alleged denial of care. He attempts to do so by pointing to instances of alleged inadequate medical care at other prisons operated by Defendant GEO, but none are particularly on point or sufficient to plausibly demonstrate that Defendant GEO has a policy of denying inmates necessary medical treatment.

Finally, the Amended Complaint claims that Defendant GEO customarily does not perform regular assessments of inmates' health. Mr. Gill is correct that municipal liability may "be based on an informal 'custom' so long as this custom amounts to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law.'"[23] However, the Amended Complaint offers no instances in which an inmate at a prison operated by Defendant GEO, other than Mr. Bradley, did not receive regular medical assessments. None of the examples in the Amended Complaint of issues at other GEO-operated prisons involve a lack of routine medical assessments. Accordingly, the Amended Complaint fails to provide any policy or custom sufficient to hold Defendant GEO liable for having a custom of failing to provide regular medical assessments. The Court therefore dismisses Mr. Gill's § 1983 claims against Defendant Dr. Boger and Defendant GEO.

---

[23] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

## II.     *Sections 7 and 9 of Article II of the Oklahoma Constitution*

Mr. Gill asserts a claim against Defendant GEO for violations of Mr. Bradley's rights under Sections 7 and 9 of Article II of the Oklahoma Constitution. Defendant GEO counters that there is no recognized cause of action for monetary damages for violations of these sections of the Oklahoma Constitution.

In *Barrios v. Haskell Cty. Pub. Facilities Auth.*, the Oklahoma Supreme Court held that "Sections 7 and 9 of Article II of the Oklahoma Constitution do not allow an inmate to bring a tort claim for denial of medical care[.]"[24] Although the Oklahoma Supreme Court distinguished *Barrios* in *Payne v. Kerns* by finding a private right of action under Section 9, that holding is limited to the cause of action having accrued before the Oklahoma legislature's amendment to the Oklahoma Governmental Tort Claims Act became effective in 2014, which extended immunity to alleged deprivations of constitutional rights.[25] Because Mr. Bradley's alleged denial of care occurred in 2022, *Barrios* forecloses Mr. Gill's state constitutional claim against Defendant GEO.

## III.    *Intentional Infliction of Emotional Distress*

Finally, Mr. Gill asserts a state-law claim of intentional infliction of emotional distress against Defendant GEO. To set out a prima facie case for IIED under Oklahoma law, a plaintiff must allege facts that show "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's

---

[24] 432 P.3d 233, 241 (Okla. 2018).

[25] 467 P.3d 659, 666 (Okla. 2020) ("*Barrios*, however, is not relevant to the present case. Payne's delayed release occurred in 2011, well before H.B. 2405 became effective.").

9

conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."[26] The Oklahoma Supreme Court further explains:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'[27]

The Amended Complaint provides only a conclusory recitation of the elements of IIED, including that Defendant GEO "intentionally and recklessly caused severe emotional distress to [Mr. Bradley] beyond that which a reasonable person could be expected to endure."[28] The Court is left to guess what specific actions by Defendant GEO allegedly amounted to IIED. Accordingly, the Court finds that Mr. Gill has failed to state a claim for IIED against Defendant GEO.[29]

### Conclusion

For the reasons given above, the Court **GRANTS** Defendants' Partial Motions to Dismiss (Dkts. 16, 19). Mr. Gill's § 1983 claims against Defendant GEO and Defendant Dr. Boger and Mr. Gill's Oklahoma State Constitution and intentional infliction of emotional distress claims against Defendant GEO are **DISMISSED**. Plaintiff's Motion to

---

[26] *Computer Publ'ns Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002).

[27] *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1376 (Okla. 1978) (quoting Restatement (Second) of Torts § 46 (1965), comment d).

[28] Am. Compl. (Dkt. 12), ¶ 166.

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a plausible claim for relief].").

Supplement Response to Defendant GEO's Renewed Motion to Dismiss (Dkt. 30) is **DENIED AS MOOT** because the proposed supplemental response would have no effect on the Court's ruling.

      **IT IS SO ORDERED** this 31st day of March 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE